554 S.E.2d 510 (2001)
251 Ga. App. 374
In the Interest of C.M., a child.
No. A01A1210.
Court of Appeals of Georgia.
August 24, 2001.
*511 Nelson & Smith, Carlton K. Nelson III, Dublin, for appellant.
Thurbert E. Baker, Atty. Gen., Dennis R. Dunn, Deputy Atty. Gen., William C. Joy, Senior Asst. Atty. Gen., Shalen S. Nelson, Asst. Atty. Gen., Lewis & King, Daniel M. King, Jr., Dublin, Hicks & Massey, Stephanie R. Sweet, Winder, for appellee.
BARNES, Judge.
The appellant, mother of C.M., appeals the termination of her parental rights to C.M. She asserts there is no clear and convincing evidence to support a finding that C.M.'s deprivation was likely to continue and, therefore, the trial court erred in terminating her parental rights. We disagree and affirm.
The trial court may terminate parental rights after satisfying a two-step analysis. First, the court must find that there is parental misconduct or inability supported by clear and convincing evidence that: (i) the child is deprived; (ii) lack of proper parental care or control caused the deprivation; (iii) the cause of deprivation is likely to continue; and (iv) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. Former OCGA § 15-11-81(b)(4)(i)-(iv) (current § 15-11-94);[1]In the Interest of L.H., 236 Ga.App. 132(1), 511 S.E.2d 253 (1999). After making findings on these four factors, the court must then determine whether terminating parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home. Former OCGA § 15-11-81(a) (current § 15-11-94(a)).
On appeal, we view the evidence in the light most favorable to the State, and determine whether a rational trier of fact could have found by clear and convincing evidence that the mother's rights to custody have been lost. In the Interest of A.C., 230 Ga.App. 395, 396(1), 496 S.E.2d 752 (1998). Additionally, we must defer to the juvenile court's fact-finding and not weigh the evidence or determine witness credibility. In the Interest of L.H., supra, 236 Ga.App. at 133, 511 S.E.2d 253.
In this case, the mother asserts the trial court's finding that the deprivation "was likely to continue was against the weight of the evidence." She argues that because the Department of Family & Children Services ("DFCS"), due to the nonreunification order, *512 did not work with her on parental issues before the termination hearing, the State's evidence is antiquated and insufficient to support a finding of present or likely future deprivation.
The termination hearing in this case was held after DFCS implemented an adoption permanency plan and the juvenile court issued a nonreunification order. Although DFCS did not work with the mother on her parenting skills after the court issued the nonreunification order and before the termination hearing, it did allow her to visit her child. The juvenile court relied on evidence produced from these parental visits and the past evidence supporting DFCS's intervention in the mother's relationship with C.M. to terminate the mother's parental rights.
Multiple witnesses testified about the circumstances and conditions that resulted in DFCS taking custody of C.M. and the juvenile court's non-reunification order. C.M.'s caseworker, his counselor at the mental health facility, the principal of his school, and his third grade teacher testified specifically about C.M.'s severe behavior problems before being removed from his mother's custody. C.M. would hit other children, kick teachers, and make verbal threats. He had to be physically restrained three times a week, and it sometimes took two adults to restrain the seven-year-old child. He used a lot of obscene language, was abusive toward his teachers and peers, and would run all over the school building. The school called the sheriff's department on more than one occasion because C.M. had run away. C.M.'s principal testified that he made numerous attempts to contact C.M.'s mother about his behavior. They called her at home, at work, sent notes home with C.M., and mailed letters to her. The principal was never able to make contact and talk with her about her son's discipline problems.
After another problem at school, the sheriff's department took C.M. to a mental health center. A doctor determined that he was violent, out of control, and a danger to himself and others and recommended placement in the Central State Hospital and anti-hyperactivity medication. When C.M.'s mother refused to give consent for C.M.'s treatment, DFCS obtained custody. According to C.M.'s mental health counselor, C.M. was so out of control that any reasonable person should have recognized that he had a problem and needed help.
Numerous witnesses testified that C.M.'s behavior and overall well-being drastically improved after the State removed him from his mother's custody. Indeed, his teacher testified that in her ten years of teaching experience, C.M. "made more academic progress in one year that I ever had another child make." His mental health counselor attributed 98 percent of his improvement to the change in his environment. Despite C.M.'s dramatic progress, his mother still disputed that his medication helped him and expressed the ongoing opinion that he did not need to be on any medication.
After C.M.'s removal from his mother, the juvenile court determined that C.M. was deprived. DFCS then developed a non-reunification plan and recommended adoption as a permanent goal, both of which were accepted by the Judicial Citizens Review Panel. The mother appealed the review panel's findings to the juvenile court, which held hearings on the non-reunification and adoption plans. During this hearing, a licensed clinical social worker testified that he had diagnosed the mother with personality disorder and intermittent explosive disorder. In his opinion, the mother posed a danger to C.M. if she did not obtain ongoing treatment by a psychologist or psychiatrist. At the time of this hearing, the mother had not completed treatment. After this hearing, the juvenile court entered a non-reunification order and directed DFCS to find an adoptive family for C.M. The mother did not appeal this order. In the termination hearing, a DFCS social worker testified that, to her knowledge, the mother still had not completed treatment for herself. While DFCS searched for an adoptive family, it allowed the mother to visit C.M. Two of C.M.'s caseworkers and his counselor at the mental health facility testified during the termination hearing that C.M.'s behavior severely deteriorated after these visits. Due to this fact, DFCS stopped the visits temporarily in an attempt to get C.M.'s behavior under control and to determine if the visits contributed to his erratic behavior. When the visits stopped, C.M.'s behavior improved.
*513 The mother did not testify in the termination hearing or present any witnesses on her behalf. Based on the above evidence, the juvenile court terminated her parental rights.
Appellant correctly asserts that "past unfitness alone is insufficient; clear and convincing evidence of present unfitness is required." (Emphasis in original.) In the Interest of J.J., 225 Ga.App. 682, 683(2), 484 S.E.2d 681 (1997). However, this does not mean that the juvenile court is prohibited from considering past evidence of unfitness in determining if deprivation is likely to continue. In the Interest of R.N., 224 Ga.App. 202, 204(1)(c), 480 S.E.2d 243 (1997). "The court [is] entitled to infer from the evidence that, despite the best efforts of DFACS and many other social workers and charities, the same pattern of deprivation would continue each time the children were reunited with their mother." Id. Moreover, "the juvenile court is not required to reunite a child with [a] parent in order to obtain current evidence of deprivation or neglect." (Punctuation omitted.) In the Interest of A.W., 240 Ga. App. 259, 523 S.E.2d 88 (1999).
After carefully reviewing the evidence, we find that the juvenile court's finding that C.M.'s deprivation was likely to continue is supported by clear and convincing evidence.
Judgment affirmed.
SMITH, P.J., and PHIPPS, J., concur.
NOTES
[1] The 2000 amendment, Ga. L.2000, p. 20, reorganized and renumbered Chapter 11 of Title 15. Former OCGA § 15-11-81 is now OCGA § 15-11-94. The amendment took effect on July 1, 2000, however, and this case was decided April 6, 2000, before its effective date.