608 S.E.2d 311 (2004)
270 Ga. App. 847
In the Interest of D.L., a child.
No. A04A1812.
Court of Appeals of Georgia.
December 10, 2004.
*312 Harold Wallace, Thomson, for Appellant.
Thurbert Baker, Attorney General, Shalen Nelson, William Joy, Senior Assistant Attorneys General, Thomas Hammond, Laura Hyman, Assistant Attorney General, for Appellee.
SMITH, Chief Judge.
The biological mother of D.L. appeals an order terminating her parental rights.[1] She asserts that the evidence was not sufficient to support a finding of parental misconduct or inability by clear and convincing evidence. After review of the record, we find otherwise and affirm.
In considering a challenge to the sufficiency of the evidence in a termination of parental rights case, the evidence must be reviewed in the light most favorable to the court's determination. In the Interest of D.B., 242 Ga.App. 763, 531 S.E.2d 172 (2000). When the evidence shows that any rational trier of fact could have found by clear and convincing evidence that the biological parent's rights have been lost, we defer to the juvenile court's factfinding. Id.
So reviewed, the evidence shows that the mother of D.L. has an extensive history of intellectual deficit and mental illness. Five weeks after D.L.'s birth, the mother was involved in a violent incident during which she handled D.L. "very roughly," physically attacked the child's grandmother, and tore a telephone from the hands of a caseworker. As a result of this incident, the mother was involuntarily admitted to Georgia Regional Hospital, and the McDuffie County Department of Family and Children Services (DFACS) sought and obtained immediate custody of D.L. due to the mother's mental instability. At the deprivation hearing, "the mother stipulated that the minor child was currently deprived and in need of the protection of this Court and that temporary legal custody should be placed in the McDuffie County DFCS." The juvenile court found D.L. to be deprived, and the mother did not appeal that finding.
To facilitate reunification of mother and child, DFACS set five goals for her: (1) maintain visitation; (2) obtain treatment for her mental health needs; (3) co-operate with all agencies concerning the child's welfare; (4) acquire parenting skills; and (5) support the child. The mother failed to comply with the case plan, particularly by failing to continue mental health counseling, a failure she acknowledged. Efforts to place D.L. with a relative were unsuccessful, and the permanency plan was modified to seek adoption through termination of parental rights.
The record demonstrates that D.L.'s mother has profound mental health problems. She has been diagnosed with intermittent explosive disorder, attention deficit hyperactivity disorder, and oppositional defiant disorder, which have been treated with powerful antipsychotic medications. The DFACS case manager who worked on the case agreed that the mother never did "come to a point where the child could have been safely returned to her" due to her mental health issues. The psychologist who examined the *313 mother noted that "[h]er difficulties with controlling anger have resulted in her being significantly medicated with corresponding sedation." In addition, she has "family, social, and communication difficulties" and moderate mental retardation. This evidence was consistent with the placement assessment from DFACS, which reported that the mother has poor memory function, a long history of violent behavior due to mental health problems, and difficulty caring for D.L. "even when receiving one on one instruction." The child advocate reported that termination was in D.L.'s best interest and that she did "believe that his mother loves him, but she is not able to parent him." The mother's very brief argument simply asserts that she "loves her child very much" and was described as "very co-operative, very sweet, kind, loving and having a desire to parent the child." She argues, without pertinent citation to case authority or the record, that the State failed to prove she is incapable of properly caring for D.L.
The termination of parental rights requires the juvenile court to undertake the two-step process outlined in OCGA § 15-11-94(a). In this case, the mother is contesting only the finding that resulted from the first step in that process, the court's finding of clear and convincing evidence of her parental misconduct or inability as outlined in OCGA § 15-11-94(b)(4)(A)(i) through (iv). Because the mother did not appeal the juvenile court's finding of deprivation, she remains bound by that finding, leaving for determination only the remaining three criteria under OCGA § 15-11-94(b)(4)(A). See In the Interest of J.S.G., 242 Ga.App. 387, 388(1), 529 S.E.2d 141 (2000). Those three criteria require proof that:
(ii) The lack of proper parental care or control by the parent in question is the cause of the child's status as deprived;
(iii) Such cause of deprivation is likely to continue or will not likely be remedied; and
(iv) The continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.
OCGA § 15-11-94(b)(4)(A).
In determining whether the child is without proper parental care and control, the court shall consider, without being limited to . . . [a] medically verifiable deficiency of the parent's physical, mental, or emotional health of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child.
OCGA § 15-11-94(b)(4)(B)(i).
Here, the record contains evidence that the mother suffers from serious and longstanding mental problems that prevent her from caring for D.L., despite her expressed desire to do so. This evidence supports the juvenile court's conclusion that D.L. was deprived, the deprivation was attributable to a lack of proper parental care, the deprivation was likely to continue, and was likely to cause serious mental, emotional, and moral harm to him. See In the Interest of A.M.V., 222 Ga.App. 528, 531-532, 474 S.E.2d 723 (1996). From this evidence, a rational trier of fact could have found clear and convincing evidence of a continuing pattern of parental misconduct or inability. See In the Interest of B.M., 252 Ga.App. 716, 721(4), 556 S.E.2d 883 (2001).
Judgment affirmed.
JOHNSON, P.J., and PHIPPS, J., concur.
NOTES
[1] The parental rights of D.L.'s biological father were terminated in the same proceeding, but he is not a party to this appeal.