712 S.E.2d 115 (2011)
In the Interest of T.A.H. et al., children.
No. A11A0245.
Court of Appeals of Georgia.
June 16, 2011.
*116 Blanton Carl Lingold, for appellant.
Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Sr., Asst. Atty. Gen., Thomas Joseph O'Donnell, Kathryn Ann Fox, Asst. Attys. Gen., for appellee.
DOYLE, Judge.
The mother of T.A.H., I.S.H., and D.M. appeals from a juvenile court order terminating her parental rights. She challenges the sufficiency of the evidence to support rulings that (1) the children were deprived, (2) the cause of the deprivation was likely to continue, and (3) continued deprivation was likely to cause serious harm to the children. We disagree and affirm.
When reviewing a termination order for sufficiency of the evidence,
[o]ur responsibility as an appellate court is to determine whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.[1]
So viewed, the record shows that one night in September 2009, police were called to a residence where T.A.H. (age 6), I.S.H. (age 3), and D.M. (age 22 months) had been left alone by their mother. They found D.M. outside crying on the front porch and the other two children inside the house. After police waited approximately 40 minutes, the mother returned home with her boyfriend, having been out retrieving a child's bed from another location and stopping at Dairy Queen on the way back. The mother and boyfriend were arrested for cruelty to children, and the children were placed into the custody of the Department of Family and Children Services ("DFCS").
The juvenile court issued a 72-hour order finding probable cause of deprivation, and DFCS filed a deprivation petition noting DFCS's prior involvement with the children. Following a hearing, the juvenile court entered an order adjudicating the children deprived. That order was not appealed.
In October 2009, the juvenile court held a permanency hearing, after which the court ordered DFCS to develop a concurrent reunification and adoption case plan. The mother's goals were to establish stable housing and employment and to work with DFCS to address her supervision and parenting issues.
In April 2010, DFCS filed a petition for termination of the mother's parental rights, alleging the mother's failure to gain sufficient parenting insight despite the resources available to her. The trial court held a hearing that included testimony from the mother, the father, a DFCS case worker, a social worker, and the children's guardian ad litem.
*117 The evidence at the termination hearing showed that the children had first come into DFCS's care in 2007 for reasons including sexual abuse, neglect, and the mother's decision to allow supervision by a registered sex offender. The mother was provided with a case plan that included parenting classes, parent aide services, visitation, psychological and psychosexual evaluations, individual therapy, and therapy with the children. In March 2009, over DFCS's objection, the children were returned to the mother's care subject to a protective order that prohibited supervision by any unrelated males.
The evidence further showed that while the children were in the mother's custody, she failed to continue to take the children to counseling and doctor's appointments, one child lost weight, and she allowed supervision by her new boyfriend.
After the children were again taken back into DFCS's care in September 2009 because they had been left unattended, the children were again provided therapy and began showing improvement in behavior and demeanor. One child, the victim of sexual trauma, would frequently assume a fetal position, but he began to be less withdrawn in therapy. The six-year-old manifested behavior indicative of being left alone and of assuming parental responsibility for the younger siblings. Two children exhibited inappropriate sexual behavior as well as post-traumatic stress disorder.
Also during the second intervention, the mother was provided with a second case plan that included additional counseling and intensive parenting classes. She attended the classes and counseling, but the social worker involved with the counseling testified that the mother exhibited poor insight into why the children were taken into care the second time. By the end of seven months of additional counseling, the mother had shown only "marginal progress," and her ability to consistently provide a safe environment for her children was "questionable," such that the social worker did not recommend placing the children with the mother at the time of the termination hearing. The social worker explained that the mother's "marginal" insight was not sufficient and that reunification was "very risky."
The DFCS caseworker testified that it sought termination because of the mother's repeated failure to gain full insight into her parenting responsibility despite repeated intervention by DFCS. She explained that there was no further help or service DFCS could provide to the mother, despite her continued lack of progress. Since being placed with the foster parent (the same from the prior intervention), the children had shown signs of improvement, and the children had bonded with their foster parent who wished to adopt them.
Finally, at the termination hearing, the guardian ad litem stated that her recommendation was termination and that the evidence from the hearing further supported her recommendation.
At end of the hearing, the juvenile court concluded that the children were deprived, continued deprivation was likely, such deprivation would likely cause serious harm, and termination was in the best interests of the children. We granted the mother's application for a discretionary appeal.[2]
A termination of parental rights case involves a two-step analysis. First, the juvenile court must find parental misconduct or inability, based on clear and convincing evidence that: (1) the child is deprived [as defined in OCGA § 15-11-2(8) ];[3] (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to *118 continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are satisfied, then the court must determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home.[4]
1. The children were deprived. The mother first challenges the juvenile court's ruling that the children were deprived. This ruling, however, was supported by the unappealed prior finding of deprivation and the further showing that the conditions upon which the finding was based, i.e., the mother's lack of supervision of the children and her lack of insight into her parenting responsibility, still existed at the time of the termination hearing.[5] Therefore, this enumeration is without merit.
2. The cause of the deprivation was likely to continue. The mother also contends that the evidence did not support a finding that the cause of the deprivation, her lack of proper parental care or control, was likely to continue. We disagree.
This criterion focuses on whether, as of the date of the termination hearing, the parent is likely to continue conduct causing deprivation. If over the intervening months or years since she originally lost custody of the children, the mother has not modified the behavior that led to the original and continued removal of the children, then a court could find that the mother will continue to so act in the future and therefore that the cause of the deprivation will likely continue.[6]
Here, the evidence showed that the mother already had been through counseling and training once, and she again grossly failed to supervise the children. At the second intervention, the children exhibited signs of chronic lack of supervision and post-traumatic stress syndrome. The therapist and the DFCS caseworker both testified that despite two interventions by DFCS and months of counseling, the mother failed to show adequate insight into her parenting responsibility.
Evidence of past unfitness, standing alone, is insufficient to terminate the rights of a parent in her natural child; clear and convincing evidence of present unfitness is required. But the trial court is entitled to consider evidence of the parent's past actions in determining whether the deprivation is likely to continue. It is not bound by mere promises to do better in the future.[7]
Thus, the mother's persistent failure to adequately supervise her children and demonstrate insight into her shortcomings supported the juvenile court's finding that the deprivation was likely to continue.
3. Continued deprivation was likely to cause serious harm to the children. Finally, the mother challenges the juvenile court's conclusion that continued deprivation was likely to seriously harm the children. However, there was ample evidence of the harm the children had already endured, including post-traumatic stress syndrome, inappropriate sexual behavior, withdrawn affect, and discipline problems. Only after the children were provided intensive counseling and cared for in a stable foster environment did they demonstrate improvement in these areas. Upon return to the mother, the children lacked the same medical and psychological care. These facts support the conclusion that continued deprivation is likely to cause serious harm to the children.[8]
*119 Further, "the juvenile court was authorized to consider the children's need for a stable home situation and the detrimental effects of prolonged foster care."[9] The evidence showed that the foster mother had cared for the children for a majority of one child's life and much of the other children's lives. The foster mother had bonded with the children, they had improved in her care, and the foster mother wished to adopt them. Thus, the children have the opportunity to continue in a stable, permanent home with a parent they have bonded with. For all of these reasons, the trial court's conclusion as to the likelihood of future harm was sufficiently supported by the evidence.
For the reasons discussed above, we discern no error and affirm the juvenile court's judgment.
Judgment affirmed.
ELLINGTON, C.J., and MILLER, P.J., concur.
NOTES
[1] (Punctuation omitted.) In the Interest of J.E., 309 Ga.App. 51, 711 S.E.2d 5 (2011).
[2] The father's parental rights were also terminated, but he is not a party to this appeal.
[3] When[, as here,] a child is no longer in the custody of a parent, a court evaluating the question of proper care and control shall also consider whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: (i) to develop and maintain a parental bond with the child in a meaningful, supportive manner; (ii) to provide for the care and support of the child as required by law or judicial decree; and (iii) to comply with a court ordered plan designed to reunite the child with the parent.

(Punctuation omitted.) In the Interest of J.E., 309 Ga.App. at 56(1), 711 S.E.2d 5
[4] (Punctuation and footnotes omitted.) In the Interest of R.J., 308 Ga.App. 702, 707, 708 S.E.2d 626 (2011).
[5] See In the Interest of K.C.W., 297 Ga.App. 714, 718(2)(a), 678 S.E.2d 343 (2009); In the Interest of P.D.W., 296 Ga.App. 189, 191-193(1)(a), (b), 674 S.E.2d 338 (2009).
[6] In the Interest of P.D.W., 296 Ga.App. at 194(1)(c), 674 S.E.2d 338.
[7] (Punctuation and emphasis omitted.) In the Interest of R.J., 308 Ga.App. at 707(2)(b), 708 S.E.2d 626.
[8] In the Interest of A.M., 259 Ga.App. 537, 543, 578 S.E.2d 226 (2003).
[9] (Punctuation omitted.) Id.