**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**October 24, 2012**

# In the Court of Appeals of Georgia

A12A0857. IN THE INTEREST OF D. T. A. et al., children.

ADAMS, Judge.

Mariano and Guadalupe Azua, the paternal grandparents of D. T. A. and K. F. A., petitioned to terminate the parental rights of the children's mother and father.[1] The juvenile court granted the termination petition, and in a prior appeal, we granted the mother's petition for discretionary review of that decision. In that appeal, this Court found that the evidence was sufficient as to three of the four requirements set forth in OCGA § 15-11-94 (b) (4) (A) for finding the parental inability or misconduct necessary to terminate parental rights, but determined that as to the fourth requirement, i. e., that the children faced a likelihood of serious harm from continued deprivation, the juvenile court failed to make the requisite findings of fact. The Court

---

[1] The appeals in this case concern only the mother's parental rights.

accordingly vacated the juvenile court's decision and remanded the case to the juvenile court to make additional findings of fact as to that fourth factor. *In the Interest of D. T. A.*, 312 Ga. App. 26, 34 (1) (717 SE2d 536) (2011). The juvenile court subsequently issued an "Order Following Remand With Direction," making specific findings of fact to support its determination that the children's continued deprivation is likely to cause serious harm to the children. We once again granted the mother's petition for discretionary review of the juvenile court's decision to terminate her parental rights, and this appeal ensued.

In addressing this appeal, we rely upon the factual recitation set out in the prior appeal. *In the Interest of D. T. A.*, 312 Ga. App. at 26-31. And as in the prior appeal, we must view the evidence in the light most favorable to the juvenile court's ruling, see *In the Interest of T. J. J.*, 258 Ga. App. 312, 314 (574 SE2d 387) (2002), and we limit our review "to addressing the question of whether any rational trier of fact could have found by clear and convincing evidence that the parent's rights should have been terminated." (Citations omitted.) *In the Interest of A. C.*, 285 Ga. 829, 836 (3) (686 SE2d 635) (2009). Moreover, we "must necessarily defer to the juvenile court's fact finding, weighing of the evidence, and credibility determinations." (Citations

omitted.) Id. See also *In the Interest of C. M.,* 251 Ga. App. 374 (554 SE2d 510) (2001).

On the basis of the facts contained in the record, this Court found clear and convincing evidence to support the juvenile court's findings that (1) the children were deprived, (2) the deprivation was caused by lack of parental care and control, and (3) the deprivation was likely to continue. Id. at 31- 32 (1). See OCGA § 15-11-94 (b) (4) (A). The mother cannot contest these findings as they are binding on all subsequent proceedings in this case. OCGA § 9-11-60 (h). See also *In the Interest of D. F.,* 261 Ga. App. 148, 150 (1) (582 SE2d 16) (2003). Accordingly, we limit our consideration in this appeal to the juvenile court's findings on the fourth factor, as well as the juvenile court's finding that termination of the mother's parental rights is in the children's best interest.[2] See OCGA § 15-11-94 (a) & (b) (4) (A).

1. Upon remand, the juvenile court's order listed the facts which it determined "warranted a finding that continued deprivation is likely to cause serious harm to the children," as follows:

---

[2] This Court declined to reach that issue in the prior appeal since it had remanded the case to juvenile court for consideration of matters that are prerequisite to a consideration of whether termination is in the children's best interest. *In the Interest of D. T. A.,* 312 Ga. App. at 34 (2).

the mother's failure to complete court ordered goals designed to reunite her with her children for more than twelve months; her failure to maintain a meaningful bond and relationship with her children; her incarceration for a felony and the negative effect of that incarceration on her ability to be a parent and to bond with her children; her history of violent behavior and untreated anger management problems; her failure to support her children for more than twelve months; and evidence that the limited contact between the mother and children was detrimental to the children. The court finds that these children are in need of permanency and a stable home, which they will obtain if parental rights are terminated.[3]

Although the juvenile court relied upon much of the same evidence it cited in support of its findings as to the other factors, this Court recently affirmed that "[w]hen the record includes evidence sufficient to support a finding that such circumstances are likely to persist and thereby leave a parent unable to provide for the needs of her child, we have said, time and again, that the same evidence also may authorize a finding that continued deprivation is likely to cause serious harm, even if it does not compel a finding of likely harm." (Citations omitted.) *In the Interest of C. L.*, 315 Ga. App. 607, 612 (1) (b) (727 SE2d 163) (2012). See also *In the Interest of D. L. T.,* 283

---

[3] The juvenile court further stated that all other portions of the final order terminating the mother's parental rights not in conflict with the order on remand "shall remain in full force and effect."

Ga. App. 223, 228 (2) (641 SE2d 236) (2007). Additionally, in assessing this factor, the juvenile court must consider "whether the child would be harmed if returned to the parent's care and control, associated environment, and state of deprivation." (Punctuation omitted.) *In the Interest of P. D. W.,* 296 Ga. App. 189, 195 (1) (d) (674 SE2d 338) (2009). "Further, a parent's failure to take the steps necessary to reunite with the child, and the child's need for a stable home are factors which the court should consider in finding that the child would suffer serious harm from continued deprivation." (Footnote omitted.) *In the Interest of Z. H. T.,* 302 Ga. App. 424, 431-432 (1) (691 SE2d 292) (2010).

In that regard, the evidence showed that the mother had committed repeated criminal acts resulting in her incarceration, as reflected in her guilty pleas to charges of making terroristic threats against the Azuas; a charge of aggravated battery against her own great-grandmother; and various charges arising from an incident in which she attempted to run over her boyfriend with a car. *In the Interest of D. T. A.,* 312 Ga. App. at 28-29. As a result, she could possibly remain in jail until 2014. When not in jail, she maintained romantic relationships with men with criminal records. Id. at 30. Because the mother's history reflected that she acted violently toward those close to her, and no evidence existed that she had taken any steps to address her anger issues

or violent tendencies, the juvenile court was authorized to find that a clear potential exists that the mother's demonstrated tendency toward violence could be directed toward the children in the future. Moreover, as a result of these and other factors, the mother has not demonstrated an ability to provide for her children and failed to complete her reunification plan. Although she had met some requirements of the plan, the evidence showed that she had failed to attend a drug and alcohol assessment, though scheduled; to maintain a stable home for the children; or to make any child support payments. Id. at 29. The evidence also authorized a conclusion that the mother had not been able to maintain a meaningful and consistent bond with the children, especially her younger child who was three months old at the time the Azuas gained custody, even though it is apparent from the record that the children and the mother enjoyed each other's company during their limited time together and conversed on a regular basis. Id. at 30. The juvenile court also found that the children needed permanence based upon the "well-established" principle "that children need permanence of home and emotional stability or they are likely to suffer serious emotional problems." *In the Interest of B. S.*, 274 Ga. App. 647, 652 (3) (618 SE2d 695) (2005).

We find, therefore, that clear and convincing evidence supported the juvenile court's findings, and these findings, in turn, authorized the juvenile court's conclusion that continued deprivation is likely to result in serious harm to the children within the meaning of the statute. See *In the Interest of D. B. C.*, 292 Ga. App. 487, 496 (1) (d) (664 SE2d 848) (2008) (a parent's "demonstrated inability to provide stable home for children or provide for their needs could clearly result in harm."); *In the Interest of T. A. M.*, 280 Ga. App. 494, 504 (8) (d) (634 SE2d 456) (2006) (parents continuing criminal activity resulting in multiple incarcerations can be considered in determining whether continued deprivation is likely to cause serious harm); *In the Interest of A. B.*, 274 Ga. App. 230, 232 (617 SE2d 189) (2005) ("it is well settled that children need permanence of home and emotional stability or they are likely to suffer serious emotional problems.") (Citations omitted.)

2. *Best interests of the children.* Similarly, we conclude the evidence discussed above and in the prior appeal also supported the juvenile court's determination that termination of the mother's parental rights was in the children's best interests "considering their physical, mental, emotional and moral condition and their need for a secure and stable home." (Punctuation omitted.) *In the Interest of T. H.*, 290 Ga. App. 421, 426 (2) (659 SE2d 813) (2008). See *In the Interest of R. S.*, (Punctuation

omitted.) 270 Ga. App. 810, 812 (608 SE2d 286) (2004) ("[t]he same factors that show the existence of parental misconduct or inability may also support the juvenile court's finding that terminating the parent's rights would be in the child's best interest"). Moreover, the evidence demonstrated that the children had a bond with the Azuas, who desired to adopt them, *In the Interest of D. T. A.*, 312 Ga. App. at 30, which could provide them the stability and permanence they require.

Accordingly, we find that clear and convincing evidence supported the juvenile court's finding that termination of the mother's parental rights was in the children's best interest.

*Judgment affirmed. Barnes, P. J., and McFadden, J., concur.*