**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS, P. J., and RAY, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 10, 2016**

# In the Court of Appeals of Georgia

A16A0231. IN THE INTEREST OF O. B. et al., children.
A16A0383. IN THE INTEREST OF T. W., a child.

ANDREWS, Presiding Judge.

In Case No. A16A0231, the mother of O. B. and T. W. (minor children) appeals from the order of the Juvenile Court of Douglas County terminating her parental rights to the children, and in Case No. A16A0383, the father of T. W. appeals from the same order terminating his parental rights in the child. We consolidate these related cases for consideration in this opinion. Because the termination petition in both cases was filed in 2013, the former version of the Juvenile Code remains applicable in both cases. Ga. L. 2013, p. 294, § 5-1 (the new Juvenile Code applies to juvenile proceedings commenced on or after January 1, 2014).

Termination of parental rights pursuant to [former] OCGA § 15-11-94 requires a two-step process. First, the court must determine under

[former] OCGA § 15-11-94 (a) "whether there is present clear and convincing evidence of parental misconduct or inability." Parental misconduct or inability is established where the court finds clear and convincing evidence of the four factors set forth in [former] OCGA § 15-11-94 (b) (4) (A):

(i) The child is a deprived child, as such term is defined in [former] Code Section 15-11-2;

(ii) The lack of proper parental care or control by the parent in question is the cause of the child's status as deprived;

(iii) Such cause of deprivation is likely to continue or will not likely be remedied; and

(iv) The continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.

Second, the court must determine under [former] OCGA § 15-11-94 (a) "whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home." On appeal from the court's decision to terminate parental rights under [former] OCGA § 15-11-94, we review the evidence in the light most favorable to the court's decision and determine whether any rational trier of fact could have found by clear and convincing evidence that the parental rights should be terminated. *In the Interest of A. D. I.*, 291 Ga. App. 190, 191 (661 SE2d 606) (2008). We do not weigh the evidence or determine the credibility of witnesses; rather, we defer to the court's factfinding and affirm unless the appellate standard is not met. *In the Interest of C. R. G.*, 272 Ga. App. 161, 162 (611 SE2d 784) (2005).

*In the Interest of T. C.*, 302 Ga. App. 693, 693-694 (691 SE2d 603) (2010). Applying these principles we find: (1) in Case No. A16A0231, the evidence was sufficient to support the court's termination of the mother's parental rights in O. B. and T. W., and

2

we affirm; and (2) in Case No A16A0383, the evidence was insufficient to support the court's termination of the father's parental rights in T. W., and we reverse.

Case No. A16A0231

1. The mother of O. B. and T. W. contends that the evidence was insufficient to support the juvenile court's December 2014 order terminating her parental rights in the children. She claims there was a lack of clear and convincing evidence to support the court's findings: (1) that the deprivation suffered by the children was likely to continue; and (2) that the continued deprivation will cause or is likely to cause the children to suffer serious physical, mental, or emotional harm.

The mother does not contest the juvenile court's findings by clear and convincing evidence that O. B. and T. W. are deprived children as set forth in former OCGA § 15-11-2, and that the cause of the children's status as deprived is the mother's lack of proper parental care or control. Former OCGA § 15-11-94 (b) (4) (A) (i), (ii). In support of those uncontested findings, the court's order terminating the mother's parental rights cites to evidence produced at the hearing on the termination petition (filed by the Georgia Department of Human Services acting through the Douglas County Department of Family & Children Services (the Department)) which showed the following:

3

O. B. and T. W. were removed from the mother's custody and placed in foster care in November 2011, and both children were subsequently adjudicated deprived suffering from severe medical neglect and repeated exposure to numerous acts of domestic violence. The children's deprivation was due primarily to the mother's mental illness and failure to take prescribed medication to address that illness. The mother suffers from mental illness diagnosed by a licensed psychologist as bipolar illness with psychotic features and possible schizophrenia and post traumatic stress disorder caused by exposure to domestic violence as a child. The psychologist who evaluated and diagnosed the mother described her appearance as disheveled and her attitude as hostile and confrontational. When not taking her medications, the mother reports that she is homicidal and hears voices in her head. The mother has a history of domestic violence and was convicted of aggravated assault committed against the father of T. W. After the children were placed in the custody of the Department, the mother married a man who the juvenile court had prohibited from having contact with the children because of violent interactions with the children. The mother did not disclose the marriage until after the termination hearing had commenced, and then informed the court that she had no feelings for the man and did not know why she married him. The psychologist concluded that the mother needed psychiatric care for

her mental illness, medication management, and therapy to enable her to understand the needs of the children and how to care for them. The psychologist found that the children were at risk of physical and emotional abuse if put in the mother's care, and that any visitation with the mother should be supervised to protect the children from this risk. During more than 30 months she was given to work on a reunification case plan, the mother failed to comply with the requirements of the plan – she failed to comply with orders for psychiatric treatment, medication management, and parenting education. The court found that the mother had demonstrated no progress through the requirements for reunification with the children, and that the children remained deprived and at risk because of the mother's out-of-control behavior caused by the untreated mental illness.

As set forth above, the mother does not contest that there was clear and convincing evidence to support the court's first two findings under former OCGA § 15-11-94 (b) (4) (A) (i) and (ii) – that O. B. and T. W. are deprived, and that lack of proper parental care and control because of her mental illness is the cause of the deprivation. Having conceded evidentiary support for those findings, we find no merit to the mother's contention that the court erred by also finding clear and convincing evidence to support its third and fourth findings under former OCGA § 15-11-94 (b)

5

(4) (A) (iii) and (iv) – that the deprivation is likely to continue and that the continued deprivation will cause the children serious physical, emotional, and moral harm. The finding that the deprivation was likely to continue was supported by evidence that, for a period of more than 30 months, the mother failed or refused to cooperate with the Department to implement the reunification plan. *In the Interest of A. K.*, 272 Ga. App. 429, 436 (612 SE2d 581) (2005). As to the finding that the continued deprivation will cause serious physical, emotional and moral harm to the children, the court considers whether the children will suffer serious harm if returned to the mother's custody given the likelihood that the deprivation would continue. *In the Interest of J. E.*, 309 Ga. App. 51, 58 (711 SE2d 5) (2011). The evidence considered by the court in support of the first three findings also supported the court's finding that continued deprivation in the mother's custody would seriously harm the children. *In the Interest of B. J. F.*, 276 Ga. App. 437, 442 (623 SE2d 547) (2005). Finally, the mother does not contest the court's finding under former OCGA § 15-11-94 (a) that, considering the physical, emotional, and moral needs of the children (including the need for a secure and stable home), termination of the mother's parental rights is in the best interests of the children. The evidence was sufficient to support the juvenile court's order terminating the mother's parental rights in O. B. and T. W.

2. The mother claims that the juvenile court verbally "suspended" evidence in the termination case at a motion hearing, and then erred by subsequently allowing evidence to be introduced and considered in the case. It is unclear what the court intended by referring to "suspended" evidence, but the record shows that the termination case subsequently proceeded with the introduction of evidence and the participation by all the parties including the mother who presented her case and introduced evidence. The mother has failed to demonstrate error or any harm resulting from the alleged error.

3. The mother contends that the juvenile court erred by giving legal effect to various "nunc pro tunc" orders. The mother apparently refers to the same "nunc pro tunc" orders which she contended the juvenile court erroneously found had legal effect in the court's prior December 2013 judgment finding the children were deprived. The mother filed a prior appeal to this Court from the deprivation order, and in an unpublished opinion – *In the Interest of O. B.*, 331 Ga. App. XXVI (2015) – we affirmed finding that the evidence presented at the deprivation hearing was sufficient to support the deprivation order, and that the alleged error regarding "nunc pro tunc" orders presented no basis for reversal. In the present appeal, the mother does not contest the sufficiency of the evidence supporting the court's findings that the

children are deprived and the deprivation was caused by lack of parental care and control. We find that, regardless of the legal effect of the "nunc pro tunc" orders, there was clear and convincing evidence supporting the juvenile court's termination of the mother's parental rights, and that this alleged error provides no basis for reversal.

4. The Department's termination petition, filed in November 2013, sought to not only to terminate the mother's parental rights in O. B. and T. W., but also three additional minor children, T. K, K. M., and K. M. The mother contends the juvenile court erred by dismissing the termination petition as to T. K., K. M., and K. M.

The record shows that, during the hearing on the termination petition, the juvenile court signed an order on October 14, 2014 which dismissed the Department's termination petition as to T. K., K. M., and K. M. and gave custody of those children to their fathers. Although the Department opposed the dismissal, the mother (through counsel) consented. The mother now contends that the dismissal order "in essence" terminated her parental rights in the three children without a hearing and without giving her an opportunity to appeal the decision. The juvenile court's dismissal order did not terminate the mother's parental rights in the three children, and the record

8

shows she filed no appeal from the dismissal because she consented to it. We find no error.

Case No. A16A0383

5. The father of T. W. contends that there was a lack of clear and convincing evidence sufficient to support the juvenile court's order terminating his parental rights on the basis of parental misconduct or inability under former OCGA § 15-11-94 (a).

The juvenile court terminated the father's parental rights, not on the basis of parental misconduct, but solely "based upon parental inability." In support of the parental inability ruling, the court's termination order found the following facts: The father had regular contact with T. W. in Arkansas (where the father resides) until his relationship with the mother ended, and the mother moved with T. W. from Arkansas to Georgia. At that point, the father's contact with the child was limited because he feared contact with the mother, who had been convicted of aggravated assault against him, and he did not have the financial resources to hire legal counsel to assert rights to the child. The father legitimated T. W. in February 2013 (after T. W. was placed in the Department's custody), and the father exercised visitation with T. W. when he traveled from Arkansas to attend juvenile court hearings in Georgia. The father is currently married, and he and his wife have two minor children. The father receives

9

disability income "based upon his intellectual functioning classified as mental retardation," and the father's wife receives disability income for impaired vision, giving them a total disability income of $1,369.00 per month. The father "functions well despite his disability," is able to supplement his disability income, and "provides for his family of four." The father's "children and wife come to Court with him and are well nourished, well groomed and behave appropriately." The court expressed concern over the father's lack of response to requests to have his Arkansas home approved for placement of T. W. through the Interstate Compact on the Placement of Children (ICPC). As to the ICPC request, the court found that the father's phone was disconnected, and that he did not respond to letters. This concerned the court because T. W. has behavioral issues that require attention to detail regarding appointments, medications and behavior management. Nevertheless, the father provided testimony at the hearing that he and his wife had housing suitable for T. W. and that, like his other two children, he would obtain medical coverage for T. W. through medicaid and attend medical appointments with the child. The court concluded that the father "loves his child, wants custody of his child and has demonstrated skills in raising his current family and has demonstrated commitment to the child in attending many of the court hearings and visiting with the child." Despite the above findings, the court

terminated the father's parental rights by finding that the father "does not have parental ability to meet the needs of this child in conjunction with his present responsibilities, his level of skills and needs of the child."

The court made no finding that the father presented any danger to T. W. or that the child's deprivation was caused by any intentional or unintentional misconduct by the father resulting in abuse or neglect of the child. Other than the failure to respond to the ICPC request, the court made no finding that the father failed or refused to cooperate with a case plan for reunification. Although there was evidence that the father did not provide support for T. W. while the child was in the Department's custody, this was not a basis for the court's termination order. Rather, the court's findings with respect to the father show that the basis for the termination order was a finding of parental unfitness by what was tantamount to the father's mental incapacity to care for T. W. "A mental disability that renders a parent incapable of caring for the child is a valid legal basis for termination." *In the Interest of L. H.*, 236 Ga. App. 132, 135 (511 SE2d 253) (1999), disapproved on other grounds, *State v. Herendeen*, 279 Ga. 323, 326 (613 SE2d 647) (2005); see former OCGA § 15-11-94 (b) (4) (B) (i). Yet the court made other findings that, despite his mental disability, the father was capable of providing for his wife and two children in Arkansas and had

11

demonstrated skills in raising his family. The father testified as to his ability to read and write.

We conclude that, even construing the evidence in favor of the juvenile court's findings of fact, there was a lack of clear and convincing evidence to support the court's termination of the father's parental rights based on parental inability. The court's finding of parental inability under former OCGA § 15-11-94 (a) required evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. Former OCGA § 15-11-94 (b) (4) (A). As to requirement (1), in the absence of an appeal from juvenile court orders finding T. W. was deprived, the father was bound by that determination. *In the Interest of N. T.*, 334 Ga. App. 732, 740 (780 SE2d 416) (2015). As to requirement (2), in determining whether the cause of the child's deprivation was the lack of proper parental care and control, former OCGA § 15-11-94 (b) (4) (B) provides that the juvenile court shall consider the factors set forth therein, which include evidence of: "(i) A medically verifiable deficiency of the parent's physical, *mental*, or emotional health of such duration or nature as to render the parent unable to provide adequately for the

physical, mental, emotional, or moral condition and needs of the child." (emphasis supplied). The juvenile court's finding that the father's intellectual functioning is "classified as mental retardation" was based on a letter the father obtained from the Social Security Administration and provided to the Department which confirmed the basis for the father's disability income and stated simply: "The disability code is mental retardation." As set forth above, the court further found that the father functions well (despite his mental disability) and has the skills necessary to provide for and raise his family (including two children) in Arkansas.

With respect to requirement (2) in former OCGA § 15-11-94 (b) (4) (A), on the present record, we find a lack of clear and convincing evidence that T. W. is deprived because the father has a mental deficiency of a nature that renders him unable to exercise proper parental care and control to provide for the needs of T. W. Similarly, with respect to requirements (3) and (4) in former OCGA § 15-11-94 (b) (4) (A), we find a lack of clear and convincing evidence that the cause of the deprivation is likely to continue, and that the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.

"Termination of parental rights is a remedy of last resort and can be sustained only when there is clear and convincing evidence [satisfying the requirements set

13

forth in former OCGA § 15-11-94].” *In the Interest of N. T.*, 334 Ga. App. at 743 (citation and punctuation omitted). We express no opinion about whether termination of parental rights may be warranted based on future conduct or evidence. Id. at 745.

*Judgment affirmed in Case No. A16A0231. Judgment reversed in Case No. A16A0383. Doyle, C. J., and Ray, J., concur.*