**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 30, 2017**

# In the Court of Appeals of Georgia

A17A1241. IN THE INTEREST OF B. D. O., A CHILD.

BETHEL, Judge.

In this case the biological father (the "father") appeals[1] from a juvenile court order terminating his parental rights to B. D. O. (the "child"). The father argues that the juvenile court erred because there was not clear and convincing evidence to support the petition for termination of his parental rights filed against him by the State. We disagree and affirm.

In reviewing a decision by the juvenile court relating to parental rights, this Court views the evidence in the light most favorable to the juvenile court's ruling. *In the Interest of D. T. A.*, 318 Ga. App. 182, 182 (733 SE2d 466) (2012) (citation

---

[1] This Court granted a discretionary appeal of this case through an order dated December 22, 2016. *See* Case number A17D0185.

omitted). Our review is limited to addressing whether "any rational trier of fact could have found by clear and convincing evidence that the parent's rights should have been terminated." *Id*. (citation omitted). In making such review, we "must necessarily defer to the juvenile court's fact finding, weighing of the evidence, and credibility determinations." *Id*. (citation omitted).

So viewed, the record shows that the child was born on August 14, 2011. The father and the child's mother later separated, and the child was removed from his home and placed in state custody. A petition to terminate the father's parental rights was filed on April 19, 2016, by the Georgia Department of Human Services ("DHS") (acting by and through the Camden County Department of Child and Family Services ("DFCS")).[2] The petition alleged that the child had been removed from the custody of his parents due to inadequate supervision, inadequate housing, domestic violence, physical abuse by a half-sibling, and a lack of adequate income to support the family. The petition also alleged a prior history of the child's deprivation and dependency

---

[2] The petition also sought termination of the parental rights of the child's mother. The juvenile court's findings of fact and conclusions of law regarding the mother's parental rights have not been challenged as part of this appeal, and references to the mother have been included in this opinion only when necessary to provide context to the juvenile court's consideration of the father's relationship to the child.

2

and noted that the child had been removed from his home by the juvenile court on a prior occasion. At the time of the petition, the child was in the custody of DFCS. The petition sought termination of the father's parental rights and the appointment of a guardian ad litem (the "Guardian").

At the hearing on the petition, testimony presented to the juvenile court by a DFCS case worker indicated that the father had been subject to a court-ordered case plan under DFCS supervision since the child's removal from the home. She indicated that the father was homeless and a transient and that he had a history of drug abuse—testing positive for marijuana five times through random drug screens over a six-month period while subject to the DFCS case plan. . The DFCS case worker indicated that the father had never legitimated the child. She also testified that the father had not completed substance abuse and parental counseling, provided verification of employment, housing, or income, or maintained regular contact with DFCS, all of which were required by his case plan.[3] The case worker noted that the

---

[3] This testimony was rebutted by the father, who presented evidence that he had completed drug tests, had received parenting and drug and alcohol counseling certificates from providers in Tennessee, that he was employed, that he had housing and transportation, and that he was in a stable romantic relationship. The father also testified that he made repeated attempts to contact DFCS to update the agency as to his whereabouts and progress but that his calls had gone unreturned.

father had been allotted 88 visits with the child while he was in DFCS custody but that the father had only attended 8 of those visits. He had also failed to pay any child support. The case worker indicated that the child was currently in foster care with a prospective adoptive family and that he was "doing good right now."

An expert witness called by the State indicated her opinion that the child's dependency would likely continue if the juvenile court did not terminate the father's parental rights and that such dependency was likely to result in serious physical, mental, emotional, and moral harm to the child. The expert stated that she based these opinions on the father's lack of progress regarding his case plan despite DFCS's attempts to reach out to him and to provide a wide range of services to him. She also noted that the child's lack of a permanent and stable home would likely impact his educational progress and social development. The juvenile court received recommendations from both the Guardian and the court-appointed special advocate ("CASA") for this case indicating that termination of the father's parental rights was in the child's best interests. The CASA also indicated that, based on an interview with the child in his foster home, it was the CASA's view that all of the child's needs were being met in that arrangement, that "he is loved and well cared for," and that his foster parents had given him "the opportunity to have a normal, happy childhood."

The CASA recommended that the child remain in his current placement "so that he can have a permanent home."

In his testimony before the juvenile court, the father admitted that he never filed a petition for legitimation, despite his attorney having prepared one for him. He also admitted that he did not provide DFCS with his current address and that he did not attend drug counseling with the DHS-approved provider in Georgia that he was referred to by DFCS. He also stated that he had not had contact with the child for over a year and admitted that he had paid no child support. Although he provided the juvenile court with recent documentation regarding his housing and employment and the results of employment-based drug screens, he admitted that he had not provided any of that information to DFCS prior to the hearing on the petition.

In its order on the petition, the juvenile court found that the father had taken no steps to maintain a relationship with the child, had a history of substance abuse, had abandoned the child, , had failed to support the child, had exercised no parental care for or control over the child, had failed to complete the goals of his case plan with DFCS,[4] and had failed to maintain required contact with DFCS. On the basis of

---

[4] Specifically, the juvenile court found the following in regard to the father's lack of compliance with the DFCS case plan: that the father had not provided documentation of stable housing suitable for himself or the child, that the father had

5

these findings, the juvenile court determined that it was in the child's best interests that the parental rights of the father be terminated. The juvenile court issued an order terminating the father's parental rights and placing the child with DFCS for the purpose of placing the child for adoption.[5] This appeal followed.

1. We first consider whether there was sufficient evidence in the record for the trial court to find by clear and convincing evidence that one or more of the statutory grounds for terminating parental rights was satisfied in this case. OCGA § 15-11-310 (a) provides that

> In considering the termination of parental rights, the court shall first determine whether one of the following statutory grounds for termination of parental rights has been met: (1) The parent has given written consent to termination which has been acknowledged by the

---

not maintained sufficient employment to support himself and the child, that the father had tested positive for marijuana five times between February and July of 2015 and was thereafter unavailable for random drug screenings, that the father had not completed required parenting classes with DFCS's approved provider, that the father had not maintained regular visitation with the child (only keeping 8 of the 88 visits that were made available to him), that the father paid no child support, that the father did not participate in recommended counseling services with a DFCS-approved provider, and that the father failed to legitimate the child despite being provided with a court-appointed attorney for that purpose.

[5] The same juvenile court order also terminated the parental rights of the child's mother. As of the date of this opinion, the mother has made no appeal to this Court in regard to that order.

court or has voluntarily surrendered his or her child for adoption; (2) The parent has subjected his or her child to aggravated circumstances; (3) The parent has wantonly and willfully failed to comply for a period of 12 months or longer with a decree to support his or her child that has been entered by a court of competent jurisdiction of this or any other state; (4) A child is abandoned by his or her parent; or (5) A child is a dependent child due to lack of proper parental care or control by his or her parent, reasonable efforts to remedy the circumstances have been unsuccessful or were not required, such cause of dependency is likely to continue or will not likely be remedied, and the continued dependency will cause or is likely to cause serious physical, mental, emotional, or moral harm to such child.

In its order on the petition, the juvenile court found that the father had subjected the child to aggravated circumstances, namely that he had abandoned the child. *See* OCGA §§ 15-11-2 (5); 15-11-310 (a) (2), (4). The court also found that the father had willfully and wantonly failed to comply for 12 months or longer with a child support decree. *See* OCGA § 15-11-310 (a) (3). Finally, the court found that the child is dependent due to a lack of proper parental care and control, that reasonable efforts to remedy those circumstances were unsuccessful, and that, due to the father's failure to complete the DFCS case plan, maintain contact with DFCS and the court, visit the child, support the child, and maintain stable housing and income, such

7

dependency is likely to continue and will likely cause serious physical, mental, or emotional harm to the child. *See* OCGA § 15-11-310 (a) (5).

The record supports a finding of abandonment under OCGA § 15-11-310 (a) (2) and (4). The evidence showed that the father paid no child support, as required by his DFCS case plan, and that he had not seen the child for over a year leading up to the termination proceedings. He also failed to legitimate the child. These factors, in addition to evidence that the father moved to Florida (and later Tennessee) without notifying DFCS, as well as his failure to attend the vast majority of scheduled visits with the child arranged by DFCS supported a finding that he had abandoned the child. *See In the Interest of K. E. A.*, 292 Ga. App. 239, 242-43 (2) (663 SE2d 822) (2008) *overruled on other grounds by In the Interest of J. M. B.*, 296 Ga. App. 786 (676 SE2d 9) (2009); *In the Interest of L. S.*, 244 Ga. App. 626, 627 (1) (536 SE2d 533) (2000) (evidence sufficient to support finding of abandonment where father only participated in two scheduled visits with child, maintained no contact with child for over two years, and provided no monetary support to child while in foster care). Evidence that the father paid no child support, as required by his court-approved DFCS case plan, also supported a finding that the father had failed to comply for a period of at least a year with a child support decree. *See In the Interest of C. A. S.*, 308

8

Ga. App. 757, 759-60 (1) (708 SE2d 655) (2011) ("A parent's failure to pay child support is compelling evidence that [the parent] is not an able parent."); OCGA § 15-11-310 (a) (3).

Pretermitting whether the evidence established grounds for termination pursuant to OCGA § 15-11-310 (a) (5), the evidence presented was sufficient to support the juvenile court's finding by clear and convincing evidence that grounds for termination of the father's parental rights were present under OCGA § 15-11-310 (a) (2), (3), and (4).

2. We next consider whether the juvenile court erred by determining that termination of the father's parental rights was in the child's best interests. OCGA § 15-11-310 (b) provides that

> If any of the statutory grounds for termination [in OCGA § 15-11-310 (a)] has been met, the court shall then consider whether termination is in a child's best interests after considering the following factors: (1) Such child's sense of attachments, including his or her sense of security and familiarity, and the continuity of affection for such child; (2) Such child's wishes and long-term goals; (3) Such child's need for permanence, including his or her need for stability and continuity of relationships with a parent, siblings, and other relatives; and (4) Any

9

other factors, including the factors set forth in Code Section 15-11-26,[6] considered by the court to be relevant and proper to its determination.

In this case, the evidence presented supported the juvenile court's determination that termination of the father's parental rights was in the child's best interests. Both the Guardian and the CASA indicated to the juvenile court their view that termination would best serve the child's interests. *See* OCGA § 15-11-26 (19) (permitting court to consider recommendation by a court appointed custody evaluator or guardian ad litem in determining best interest of the child). The CASA also opined that the child's current foster care placement served the child's interests by providing a sense of permanence and well-being and that a permanent placement in that home via adoption would be in the child's best interests. *See* OCGA §§ 15-11-26 (2), (4)-(8); 15-11-310 (b) (3).

In addition to those recommendations, the juvenile court heard evidence of the father's history of substance abuse, including multiple failed drug tests. *See* OCGA § 15-11-26 (18) (permitting court to consider parent's history of substance abuse in

---

[6] OCGA § 15-11-26 sets forth an additional, non-exhaustive list of factors the court can consider in determining the best interests of the child. OCGA § 15-11-26 (20) additionally provides that the court may consider "[a]ny other factors considered by the court to be relevant and proper to its determination."

determining best interest of the child). Likewise, the court heard evidence of the child's dependency, the father's abandonment of the child, and his failure to comply with key elements of his DFCS case plan, all of which supported a determination that termination would best serve the child's interests. *See In the Interest of D.T.A.*, 318 Ga. App. at 185 (2) (noting that the same evidence that shows a lack of parental care and control can also support a finding that termination is in a child's best interests).

There was thus sufficient evidence in the record to support the juvenile court's finding by clear and convincing evidence that termination of the father's parental rights was in the child's best interests.

*Judgment affirmed. McFadden, P. J., and Branch, J., concur*.