**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 20, 2018**

# In the Court of Appeals of Georgia

A18A1162. IN THE INTEREST OF E. M.

RICKMAN, Judge.

The biological father of E. M. appeals from a juvenile court order terminating his parental rights to his minor child. For the reasons given below, we affirm.

The record shows that in December 2015, the Juvenile Court of Murray County entered a dependency removal order for three children, including E. M. (then age five), arising in part from the children's mother having tested positive to multiple controlled substances at the time she gave birth to the youngest of the three children. The children were placed in foster care. The local Department of Family and Children Services ("DFCS") thereafter filed a petition alleging that the children were dependent, and the court entered a preliminary protective order. At the hearing on the

petition, the mother testified that the appellant, the biological father of only E. M.,[1] was incarcerated for "family violence" and that the couple was not married. The appellant was not present for the hearing. In January 2016, the court found that the children were dependent because the appellant was incarcerated, the other two biological fathers had no bond with their children, and the mother was an unrehabilitated drug user; the court therefore placed custody of the children with DFCS. All parents were ordered to contact the office of child support enforcement immediately to establish an account for the payment of any child support obligation, which was set, at a minimum, at $45 per week for one child pending further determination.

Separately, the appellant was issued a "reunification/adoption" case plan that required him to comply with numerous conditions, including that he begin supervised visits with E. M. once he was released from incarceration "if approved by the courts."

As of a February 2016 case plan review, the appellant had been appointed counsel, but he remained incarcerated and did not appear; he was expected to come up for parole in May 2016. In that same month, he moved to legitimate E. M.

---

[1] The appellant is not the biological father of the other two children, and this appeal concerns the termination of the appellant's parental rights to E. M.

In December 2016, DFCS filed a petition to terminate the parental rights of all three children. A hearing on the matter was held on June 20, 2017. The appellant was still incarcerated at the time of the hearing and not present, although he was represented by counsel. At the termination hearing, DFCS presented two witnesses, and the court took judicial notice of the entire record with certain exceptions not relevant here. The mother was not present because she recently had been arrested on a new drug charge and was incarcerated. The guardian ad litem and the court-appointed special advocate (CASA), who were present at the hearing, did not testify, but the CASA's reports are included in the record.

Following the hearing, the juvenile court terminated all of the parents' parental rights, including the appellant's. The trial court found (1) that all parents had wantonly and willfully failed to comply with orders to support their children; (2) that the children had been abandoned by their parents; and (3) that the children were dependent due to a lack of proper parental care or control by their parents, that reasonable efforts to remedy the circumstances were unsuccessful or not required, that the cause of the dependency of each child was likely to continue or not be remedied, and that continued dependency would cause or was likely to cause serious harm to the children.

With regard to the appellant specifically, the court found that he had been incarcerated during the entirety of the case and had failed to complete any case plan goals; that he "ha[d] a history of use and abuse of illegal drugs and ha[s] unrehabilitated substance abuse issues"; that he had a "history of repeated criminal behavior and incarcerations which have had a demonstrably negative effect on the quality of relationship with his child"; that he has had no relationship with his child since she entered care; and that he had sent the child only one card and no gifts or support.

Finally, the court found that the children were bonded to the current foster parents and vice versa, that DFCS had made reasonable efforts to finalize the permanency plan, and that it was in the best interests of the children that termination of parental rights be granted.

We granted the appellant's application for discretionary review, and this appeal followed.

1. The appellant first contends that the trial court lacked personal jurisdiction over him because he was not personally served with process regarding the termination of his parental rights. This assertion of error, however, is not properly before this Court.

4

An application for discretionary review must "enumerat[e] the errors to be urged on appeal," OCGA § 5-6-35 (b), and so, when we grant discretionary review, it necessarily is limited to the errors actually enumerated in the application.

*Zekser v. Zekser*, 293 Ga. 366, 369 (2) (744 SE2d 698) (2013); see also OCGA § 15-1-2 ("lack of jurisdiction of the person may be waived"). Here, the appellant did not enumerate lack of personal jurisdiction as an error in his application for discretionary review, and therefore that enumeration is waived. See, e.g., *Lutz v. Lutz*, 302 Ga. 500, 502 (1) (807 SE2d 336) (2017).

2. The appellant contends that insufficient evidence was presented to warrant termination of his parental rights.

On appeal from an order terminating parental rights, we review the evidence in the light most favorable to the juvenile court's judgment in order to determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. We neither weigh evidence nor determine witness credibility, but defer to the juvenile court's findings of fact and affirm unless the appellate standard is not met.

(Citation and punctuation omitted). *In the Interest of U. G.*, 291 Ga. App. 404, 404 (662 SE2d 190) (2008).

Construed in favor of the judgment, the evidence presented to the trial court—as found in the record of the entire proceedings, for which the court took judicial notice, and as presented at the termination hearing—is set forth either in the recitation of the procedural facts above, or as follows.

The children had been in DFCS custody since May 28, 2016. The appellant had "issues with drugs and alcohol"; had not completed any case plan goals; and had failed to provide DFCS with proof of stable housing or income, drug treatment, payment of child support, or psychological evaluations. Further, the appellant had not had a relationship with the child during the two years that DFCS had been involved and, in the same two years, the appellant had only sent the child one card, no gifts, and no money or support. The case manager had written to the appellant once a month since she had become involved and the appellant had responded perhaps four times. DFCS performed an exhaustive search for appropriate family members with whom to place the child but found none. DFCS performed a home evaluation of the appellant's mother's home, but her home was not approved because the appellant had lived there and he had a "drinking problem," the appellant and the mother had unspecified "domestic violence" issues, and DFCS could not confirm that the appellant's mother would prevent the mother and appellant from living there in the

future. E. M. was doing well and strongly bonded with her foster mother but was receiving counseling due to behavioral issues. Finally, there was testimony that it was in the children's best interest to terminate the parental rights of all of the parents.

The court considered the CASA's reports, which are contained in the record. The reports show that the appellant never indicated any interest in obtaining custody of the child, and that the CASA recommended that the appellant's parental rights be terminated and that termination was in the child's best interests.

The court also allowed into evidence certified copies of six criminal multi-count convictions of the appellant ranging from 2002 to 2015, including at least three convictions of family violence (battery), one being a felony, as well as a conviction of second degree cruelty to children because an incident of violence occurred in the presence of a child. More specifically, in the first case, the appellant was convicted of family violence battery for striking his spouse about the head and face and knocking her to the ground; cruelty to children for doing so in the presence of two children; and disorderly conduct for breaking the windshield of his spouse's car. In the second case, the appellant was convicted of obstruction of a law enforcement officer by fleeing from the officer; he was sentenced to time served plus probation. In the third case, the appellant was convicted of family violence battery for striking

a woman about the head and body and throwing her to the ground. In the fourth case, the appellant pled guilty to felony family violence battery for striking a woman about her head and body, dragging her across the floor, and by kicking her. In the fifth case, the appellant again pled guilty to family violence battery for striking the same victim about the head and body; in April 2013, he was sentenced to four years to serve two, with the remainder on probation. Finally, in the sixth case, the appellant was convicted of two counts of aggravated stalking for violating his previous probation by having contact with the victim for the purpose of harassing and intimidating her; he was also convicted of terroristic threats by offering to commit other violent acts on the same victim. On June 1, 2015, he was sentenced to a total of twelve years to serve approximately four years and three and a half months (after credit for time served), with the remainder on probation.

(a) The juvenile code calls for a two-pronged analysis in such a case. See OCGA § 15-11-310.[2] First, the trial court determines whether one of five statutory grounds for termination has been met, including the three grounds upon which the court relied in this case:

---

[2] The current juvenile code went into effect on January 1, 2014, before the original petition in this case was filed on December 12, 2016. See Ga. L. 2013, p. 294, § 5-1.

8

The parent has wantonly and willfully failed to comply for a period of 12 months or longer with a decree to support his or her child that has been entered by a court of competent jurisdiction of this or any other state;

A child is abandoned by his or her parent; or

A child is a dependent child due to lack of proper parental care or control by his or her parent, reasonable efforts to remedy the circumstances have been unsuccessful or were not required, such cause of dependency is likely to continue or will not likely be remedied, and the continued dependency will cause or is likely to cause serious physical, mental, emotional, or moral harm to such child.

OCGA § 15-11-310 (a) (3), (4), (5).[3] These grounds are independent, and thus, on appeal, if there is sufficient evidence supporting any one of these grounds, we need not consider the other grounds in order to affirm.[4] See, e.g., *In Interest of B. D. O.*, 343 Ga. App. 587, 591 (1) (807 SE2d 507) (2017); *In the Interest of S. G. T.*, 175 Ga. App. 475, 477 (2) (333 SE2d 445) (1985). Second, if one or more of these criteria has been met, the trial court then considers whether termination is in each child's best interest by considering certain factors as shown below. OCGA § 15-11-310 (b).

---

[3] The statute was amended in 2018 to include additional language. See Ga. L. 2018, p. __, § 3.

[4] Thus, even if aspects of the trial court's rulings on the other grounds might be flawed, the appellant cannot show harm as long as the evidence supports the trial court's rulings on one ground. See *In re M. T. C.*, 267 Ga. App. 160, 161 (598 SE2d 879) (2004).

As shown above, the trial court found three independent statutory grounds for terminating the appellant's parental rights in the child, including that he wantonly and willfully failed to comply for a period of 12 months or longer with a decree to support his or her child. See OCGA § 15-11-310 (a) (3). The court found as a matter of fact that the appellant had failed to provide any gifts or support at any time during the proceedings.

On appeal, however, the appellant references this ground in only one sentence of his brief: "When asked whether she or anyone at DFCS ever informed [the appellant] of an amount he was supposed to be paying in child support for his child, she testified she did not and had no knowledge anyone else with DFCS so informed him." The appellant did not otherwise argue or cite any authority to support that the trial court erred in its finding on this ground. "Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned." Court of Appeals Rule 25. Pretermitting whether the appellant abandoned this argument, however, we conclude that clear and convincing evidence was presented to support this independent ground for terminating the appellant's parental rights.

First, on January 19, 2016, the appellant was ordered by the court to pay support of $45 per week pending further determination. Although the DFCS case manager admitted that she had not personally informed the appellant of the required amount of support, this order provided the appellant with the required information. And it is undisputed that the appellant was represented by counsel as of February 22, 2016, if not before. Next, the DFCS case manager testified that the appellant failed to provide any support for the child through the date of the final hearing on June 20, 2017, well over 12 months after the date of the court order requiring him to support the child. Thus, the undisputed evidence supports the trial court's finding that the appellant failed to comply for a period of 12 months or longer with a decree to support his child. See OCGA § 15-11-310 (a) (3).

With regard to the finding that the appellant's actions were wanton and willful, although it is true that an inability to earn income due to incarceration may constitute justifiable cause for failing to pay child support, see *In re G. W. R.*, 270 Ga. App. 194, 199 (2) (606 SE2d 281) (2004), here, the appellant failed to offer any explanation whatsoever for failing to pay any support. Id.; see also *In the Interest of M. J. P.*, 290 Ga. App. 184, 187 (659 SE2d 402) (2008) ("incarceration does not per se give rise to justifiable cause"). The court therefore was authorized to conclude that the

11

appellant's failure to pay support was wanton and willful. See *In re A. D. L.*, 253 Ga. App. 64, 68 (2) (557 SE2d 489) (2001) (appellant's failure to show lack of ability to pay contributed to trial court's finding by clear and convincing evidence of wanton and willful failure to pay court-ordered child support for a period of 12 months or more); *In Interest of J. M. H.*, 203 Ga. App. 856, 857 (1) (418 SE2d 128) (1992) (clear and convincing evidence of wanton and willful failure to pay court-ordered support shown where appellant "offered no evidence of justifiable cause for not supporting his child"); cf. *In the Interest of S. R. M.*, 283 Ga. App. 463, 468 (2) (a) (641 SE2d 666) (2007) (imprisoned parent may present testimony to the court by affidavit or deposition).

Combined with the appellant's almost complete lack of contact with the child, we conclude that appellant's failure to explain his failure to pay court-ordered support provided sufficient evidence to show that the appellant wantonly and willfully failed to comply for a period of 12 months or longer with a decree to support his child. See OCGA § 15-11-310 (a) (3); *In Interest of J. M. G.*, 214 Ga. App. 738, 739 (3) (448 SE2d 785) (1994) (wanton and willful failure to pay court-ordered support for more than one year supported termination under prior similar statute); *In Interest of G. K. J.*, 187 Ga. App. 443, 444 (2) (370 SE2d 490) (1988) (same).

12

(b) The appellant also contends that insufficient evidence was presented to show that termination of his parental rights was in the best interests of the child. The statute applicable to this case[5] provided that when addressing the best interests of the child, the court consider the following factors:

(1) Such child's sense of attachments, including his or her sense of security and familiarity, and the continuity of affection for such child;

(2) Such child's wishes and long-term goals;

(3) Such child's need for permanence, including his or her need for stability and continuity of relationships with a parent, siblings, and other relatives; and

(4) Any other factors, including the factors set forth in Code Section 15-11-26,[6] considered by the court to be relevant and proper to its determination.

OCGA § 15-11-310 (b).

The trial court found that termination of the appellant's parental rights was in the child's best interests in part because the appellant "essentially had no relationship with the child since she entered care"; he sent the child only one

---

[5] The statute was amended in 2018. See Ga. L. 2018, p. _, § 3.

[6] "OCGA § 15-11-26 sets forth an additional, non-exhaustive list of factors the court can consider in determining the best interests of the child." *In Interest of B. D. O.*, 343 Ga. App. 587, 591 n. 6 (807 SE2d 507) (2017). These include "[a]ny other factors considered by the court to be relevant and proper to its determination." OCGA § 15-11-26 (20).

card during the pendency of the case; he failed to send any gifts or support; and he had "a history of repeated criminal behavior and incarcerations that have had a demonstrably negative effect on the quality of [the] relationship with his child."

The evidence cited above supports these findings. The record shows that the appellant never indicated that he wanted custody of the child; that with one exception in 18 months, he failed to communicate with the child; that he failed to pay court-ordered support; that he had been incarcerated repeatedly for violence, including family violence; that in one incident, he committed family violence in the presence of a child; that, at a minimum, the appellant had a drinking problem; that the child was bonded to her current foster parents and was doing well; and that the CASA opined that it was in the child's best interests to terminate the appellant's parental rights. These findings are sufficient to support the court's conclusion that termination of the appellant's rights was in the child's best interests as is evident from best-interest factors found in the Code. See OCGA § 15-11-26 (2) ("[t]he love, affection, bonding, and emotional ties existing between such child and each parent"); OCGA § 15-11-26 (4) (the "[s]uch child's need for permanence"); OCGA § 15-11-26 (6) ("[t]he capacity

14

and disposition of each parent or person available to care for such child to give him or her love, affection, and guidance"); OCGA § 15-11-26 (8) ("[t]he stability of the family unit"); OCGA § 15-11-26 (18) ("[a]ny evidence of family violence, substance abuse, criminal history"); and OCGA § 15-11-26 (19) ("[a]ny recommendation by a court appointed custody evaluator"). Cf. *In Interest of B. D. O.*, 343 Ga. App. 587, 592 (2) (807 SE2d 507) (2017) ("the same evidence that shows a lack of parental care and control can also support a finding that termination is in a child's best interests").

(3) Finally, citing OCGA § 15-11-202, the appellant contends that the trial court erred by concluding that DFCS used reasonable efforts to reunify the appellant and his child. He argues further that he was entitled to a case plan that contained achievable goals and assistance in meeting those goals.

(a) A review of the Juvenile Code shows that OCGA § 15-11-202 pertains to dependency proceedings, not termination proceedings. Termination proceedings are a separate matter and are governed by Article 4 of the Juvenile Code. See OCGA § 15-11-260 et seq. The purpose of a termination proceeding is to protect children who already have been adjudicated as dependent from parents unwilling or unable to provide safety and care adequate to protect the

15

children, "by providing a judicial process for the termination of all parental rights and responsibilities." OCGA § 15-11-260 (a) (1). The "reasonable efforts" requirement pertaining to termination proceedings is found in OCGA § 15-11-310 (a) (5), which, as applicable to this case, provided for termination of parental rights if:

> A child is a dependent child due to lack of proper parental care or control by his or her parent, *reasonable efforts to remedy the circumstances have been unsuccessful or were not required*, such cause of dependency is likely to continue or will not likely be remedied, and the continued dependency will cause or is likely to cause serious physical, mental, emotional, or moral harm to such child.

(Emphasis supplied). Nothing else in Article 4 of the Juvenile Code references "reasonable efforts" or OCGA § 15-11-202. For the above reasons, we conclude that OCGA § 15-11-202 is not applicable to the issue of the appellant's failure to comply with a support decree. Cf. *In Interest of V. S.*, 230 Ga. App. 26, 30-31 (2) (495 SE2d 142) (1997) (holding that, under prior version of the Juvenile Code, procedures contained in statute pertaining to orders of disposition removing a child from the home of his parents and placing him in the State's care did not pertain to proceedings to terminate parental rights); *In re F. C.*, 248

Ga. App. 675, 679 (2) (549 SE2d 125) (2001), disapproved on other grounds by *Miller v. State*, 285 Ga. 285 (676 SE2d 173) (2009) (under prior version of the Juvenile Code, statute regarding reasonable efforts for reunification pertaining to removal and placement orders did not pertain to termination proceedings).

And, because we are affirming the trial court's termination order based on the third of five independent grounds for termination, see OCGA § 15-11-310 (a) (3), we need not address whether the trial court had sufficient evidence to support termination under OCGA § 15-11-310 (5), which contains the only "reasonable efforts" clause related to termination proceedings. Similarly, because our holding does not depend on the trial court's conclusion that the appellant failed to meet the requirements of his case plan, the appellant's argument that the trial court erred with regard to that holding does not require a reversal.

*Judgment affirmed. McFadden, P. J., and Ray, J., concur.*