**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS
COURT. ALL FILINGS MUST BE SUBMITTED WITHIN
THE TIMES SET BY OUR COURT RULES.*

**December 3, 2021**

# In the Court of Appeals of Georgia

A21A1386. IN THE INTEREST OF A. B., et al., children.

HODGES, Judge.

In August 2019, the juvenile court terminated the mother's parental rights to A. B., M. C., and K. B., all minor children.[1] We granted the mother's discretionary appeal, in which she contends that the juvenile court erred in terminating her parental rights despite insufficient evidence to show that the children were harmed or were presently dependent; that the Department of Family and Children Services ("DFACS") failed to make reasonable efforts to reunify the family; and that the trial

---

[1] A. B. was born June 19, 2008; M. C. was born February 16, 2011; and K. B. was born June 16, 2016.

court erred by allowing the admission of certain testimony.[2] For the reasons that follow, we affirm in part and vacate and remand in part.

"On appeal from a juvenile court's decision to terminate parental rights, we review the evidence in the light most favorable to the juvenile court's ruling and determine whether any rational trier of fact could have found by clear and convincing evidence that the parent's rights should be terminated." *In the Interest of A. B.*, 346 Ga. App. 2 (815 SE2d 561) (2018).

So viewed, the record shows that the two older children, A. B. and M. C., were first found dependent because of the mother's substance abuse, inadequate housing, and lack of income. They were removed from her care in 2015 and spent about 1 ½ years in foster care in Haralson County. The mother completed residential substance abuse treatment and regained custody.

In 2017, DFACS in Douglas County removed all three children from their mother's care,[3] including K. B., who was then a baby. A. B. and M. C.'s school

---

[2] This appeal was initially filed as Case No. A21A0499, but that case was first dismissed because the mother failed to file an appellate brief, then reinstated, then later remanded to the trial court for completion of the record. It has been redocketed as A21A1386.

[3] The juvenile court found that the mother took the children to Douglas County in an attempt to avoid an investigation by Haralson County DFACS.

contacted DFACS because the older children came to school hungry and unkempt, with matted hair, and wearing dirty clothes that were inappropriate for the weather. The mother had left A. B. and M. C. in the care of A. B.'s grandfather, who lived in a "known drug house." The mother did not live in that house, but moved from place to place with K. B., and avoided contact with DFACS. The mother had a history of substance abuse and had not submitted to drug screens. She also had a history of domestic violence in the children's presence with one of the putative fathers. The juvenile court found that the children were severely neglected and in an unsafe living environment, and placed them in DFACS custody.

The juvenile court reviewed the children's cases in early 2018, and, in 2019, issued orders of adjudication and disposition finding the children dependent.[4] The juvenile court found that the mother had executed a document in 2017 placing the children in the temporary custody of a woman who lived in a home with a number of other adults, but not the mother. DFACS was unable to determine exactly who else lived there. The juvenile court found that A. B. and M. C. were dressed

---

[4] The mother appealed the juvenile court's 2018 dependency finding, and this Court vacated and remanded that order for further findings of fact and conclusions of law. *In the Interest of A. B.*, 350 Ga. App. 158, 159 (1) (828 SE2d 394) (2019). The juvenile court issued revised orders, which the mother has not appealed.

inappropriately for school, that one child had no underwear, that both children had seasonally inappropriate shoes and socks or shoes that did not fit, and lacked school supplies. The school purchased all these items for them. Their hair was matted and they had lice. Even when kept out of school for lice treatment, they returned with nits in their hair. The school's health monitor groomed them because the mother testified that she could not see the nits and needed someone else to remove them. Both older children had severe eczema consistent with stress and neglect, and one child's legs were so swollen the school sought medical attention for her, as the health monitor was unable to reach the mother. The children made more than 20 trips to the health monitor, and M. C. was absent so much that her teacher believed it interfered with her education. The mother was unresponsive when contacted about the children's excessive absences, tardies, and grading issues. Also, the older children's Medicaid had been allowed to lapse.

The juvenile court found that, at the time of removal, the baby, K. B., was "in poor condition," "very sick and in need of medical care," and that the mother had also allowed her Medicaid to lapse. The juvenile court found that the mother's appearance, behavior, and testimony at the hearing were "consistent with substance abuse." She had relapsed and not returned to treatment. It found all three children dependent

because of the mother's chronic neglect, inadequate supervision, and delegation of parental responsibility to others who failed to provide adequately for the children, including a failure to provide insurance coverage for all the children and adequate medical care for K. B.

The juvenile court additionally found that DFACS made reasonable efforts to prevent the children's removal and facilitate their return home by providing referrals for drug screens and family preservation services, which the mother refused. Although DFACS created a reunification case plan, the mother refused to sign it. The mother did not appeal these dependency findings, which were based upon hearings held in early 2018.

The juvenile court next held termination hearings in July 2019. In addition to testimony about how the children were doing in their respective placements, which will be discussed more fully below, the juvenile court heard testimony that the mother refused to review her reunification case plan with DFACS and failed to complete it, and failed to get required parental fitness, psychological, and substance abuse assessments. She failed to complete approximately five requested drug screens, but did complete one, testing positive for THC, methamphetamine, and amphetamines. The mother also never paid child support, never obtained domestic violence

counseling, never provided proof of any income, and never provided proof of stable housing. The case worker who visited the mother's home testified that it lacked running water, had exposed electrical wires, was very cluttered inside and out, and had a weapon out in the open. When the case worker told the mother that the home was inappropriate for children, the mother refused to respond. The case worker testified that, other than inconsistent visits, the mother made no attempt to reunite with her children.

The juvenile court suspended the mother's visitation in May 2019, finding that she had demonstrated disruptive and inappropriate behaviors and appeared to be under the influence of illegal substances during visits, and that this behavior was negatively affecting the children. It does not appear from the record that the mother contested that suspension. However, a therapist testified that, in June and July 2019, she attempted to set up therapeutic visitations between the mother and her children, but the mother refused to confirm the visits and said she did not have time to confirm the visits.

The mother did not appear at either of the termination hearing dates, although an attorney appeared on her behalf. In August 2019, the juvenile court terminated the mother's parental rights,[5] and we granted the mother's discretionary appeal.

1. The mother contends that the evidence was insufficient to show that the children were harmed by their current circumstances. We find no error as to A. B. and M. C., but must vacate the juvenile court's judgment as to K. B.

Because the mother did not appeal from the juvenile court's revised determinations that the children were dependent, these findings are conclusive and sufficient to show that at that time, the children were dependent due to the mother's lack of proper parental care or control. *In the Interest of C. A. B.*, 347 Ga. App. 474, 476, n. 2 (819 SE2d 916) (2018). Thus, our inquiry examines, in the context of the mother's enumeration, whether clear and convincing evidence shows that continued dependency would harm the children.

The juvenile court terminated the mother's parental rights pursuant to OCGA § 15-11-310 (a) (5), which provides a ground for termination when

---

[5] The juvenile court also terminated the parental rights of three respondent fathers or putative fathers. These fathers are not part of the instant appeal.

7

[a] child is a dependent child[6] due to lack of proper parental care or control by his or her parent, reasonable efforts to remedy the circumstances have been unsuccessful or were not required, such cause of dependency is likely to continue or will not likely be remedied, and the continued dependency will cause or is likely to cause serious physical, mental, emotional, or moral harm to such child.

In regard to the harm provision of OCGA § 15-11-310 (5) (A) and (B), a juvenile court

must assess whether a child currently in foster care is likely to suffer serious harm as a result of continued dependency if the child remains indefinitely in foster care, *and also* the likelihood of harm if the child returns to the custody of the parent, notwithstanding that the [dependency] persists.

(Citation and punctuation omitted; emphasis supplied.) *In the Interest of A. S.*, 339 Ga. App. 875, 881 (3) (794 SE2d 672) (2016); accord *In the Interest of E. M. D.*, 339 Ga. App. 189, 201-202 (II) (B) (793 SE2d 489) (2016).

---

[6] A "dependent child" is a child who "(A) [h]as been abused or neglected and is in need of the protection of the court; (B) [h]as been placed for care or adoption in violation of law; or (C) [i]s without his or her parent, guardian, or legal custodian." OCGA § 15-11-2 (22).

8

(a) *K. B.*: The mother argues that the evidence was insufficient to show that K. B. was harmed by her current living circumstances,[7] where she had been placed in a foster-to-adopt home. The mother also argues that the juvenile court's order failed to assess the extent to which instability was specifically harming K. B., and whether she would be harmed by remaining in foster care "indefinitely." We are constrained to agree.

The mother points only to testimony from a social services case manager who testified that K. B. is "'doing fantastic' in her foster home." The State, however, points to no evidence or testimony whatsoever regarding K. B. that addresses the issue of harm, either as it relates to K. B.'s remaining indefinitely in foster care or her likelihood of harm if returned to the mother. See *Interest of A. S.*, 339 Ga. App. at 881 (3); *Interest of E. M. D.*, 339 Ga. App. at 201-202 (II) (B). The juvenile court's order made no factual or legal findings specific to K. B. regarding harm.

"These deficiencies prevent us, in this case, from making an intelligent review of the mother's . . . challenges to the sufficiency of the hearing evidence." (Citation and punctuation omitted.) *Interest of A. B.*, 350 Ga. App. at 159 (1). Accordingly, we

---

[7] The mother raises no other viable contentions of error related to the juvenile court's findings pursuant to OCGA § 15-11-310 (5), so we do not address them.

vacate the juvenile court's termination order as to K. B. and remand the matter "with direction that the juvenile court prepare appropriate findings of fact and conclusions of law and enter a new judgment, after which another appeal [as to K. B.] may be made." Id.

(b) *M. C. and A. B.*: The mother argues that the evidence was insufficient to show that A. B. and M. C. would be harmed if returned to her custody or if they remained indefinitely in foster care,[8] and that the juvenile court did not make appropriate findings as to these children. We disagree.

The mother presented no record citations to evidence supporting these contentions related to M. C. and A. B. Although Court of Appeals Rule 25 (c) (2) (i) provides that we need not search for or consider an enumerated error unsupported by record citations, because of the importance of the issue at hand, we have reviewed the record and find no merit in the mother's contentions as to M. C. and A. B.

---

[8] Again, the mother raises no other viable contentions of error related to the juvenile court's findings pursuant to OCGA § 15-11-310 (5), so we do not address them.

M. C. and A. B. had both been placed in the care of Joshua Davis,[9] who testified that he was M. C.'s biological father, although he had not taken a DNA test.[10] He is not A. B.'s biological father, but he is on track to adopt her. Both older girls had expressed a desire to continue living with him because of the security his home provided.

A licensed professional counselor and play therapist was qualified as an expert without objection from the mother's counsel,[11] who questioned the expert extensively about her qualifications. This counselor testified that, when M. C. entered foster care, she was "stubborn, disobedient, . . . and having temper outbursts and rapid mood

---

[9] A. B. also was living with Davis, although she is not his biological daughter.

[10] The juvenile court terminated the parental rights of M. C.'s legal father, who has not appealed.

[11] The mother argues that the juvenile court erred in admitting expert testimony from this therapist, whom she contends lacked specialized knowledge, skill, experience and training. The mother cites to a single transcript page in support of her contentions, where the therapist testifies about her education, qualifications and experience. The mother provides no record citations to the specific testimony which she contends the therapist was unqualified to give, and we will not cull the record on her behalf in search of error. *Guilford v. Marriott Intl.*, 296 Ga. App. 503, 504 (675 SE2d 247) (2009); accord Court of Appeals Rule 25 (c) (2) (i). As the mother "provides no record citation to show where this violation allegedly occurred, [she] therefore has failed to show error by the record." *Jones v. State*, 318 Ga. App. 342, 348 (3) (a) (iv), n. 5 (733 SE2d 400) (2012).

11

changes." She was diagnosed with adjustment disorder and mixed disturbance of emotions and conduct. Since living with her father and in foster care, her behavior has improved and she has been better able to communicate about her feelings.

The counselor, who was actively treating M. C., testified that, since entering foster care and then moving in with her father, M. C.'s behavior had improved. She testified that to continue M. C.'s healing and behavioral improvements, it was important that she obtain a permanent home, and that she would be psychologically harmed if she was removed from Davis's care and returned to her mother because she had fears of abandonment. The counselor testified that, if M. C. did not achieve a permanent home, because of her past traumas with her mother, she was likely to suffer learning issues, emotional problems, personality disorders, low self-esteem, and low ability to empathize in her future life.

The counselor also testified about A. B., whom she also was treating. The counselor testified that A. B. had been diagnosed with adjustment disorder and mixed disturbance of emotions and conduct "[b]ecause of the changes that she's experienced throughout her life[,]" and that she also presented with symptoms of trauma and ADHD. The trauma symptoms included temper outbursts, destructive behavior, aggression, peer conflict, low self-esteem, and low empathy amounting to "post-

12

traumatic stress symptoms" because of the stressful events she had been exposed to over the years. She testified that A. B.'s symptoms had improved in foster care with Davis because of the consistency and security the home offered.

Another licensed professional counselor and trauma assessor also was qualified as an expert, and the mother's counsel specifically stated she had no objections to this qualification.[12] She completed a trauma assessment of M. C. This counselor testified that M. C. was diagnosed with adjustment disorder and disclosed trauma from witnessing domestic violence while living with her mother. She testified that M. C. was bonded to Davis and would be harmed if she did not have a permanent, consistent caregiver, resulting in disruptive behaviors, anxiety, depression, and abandonment issues. It was in the best interests of M. C., the counselor testified, to remain with Davis.

This counselor also as to A. B. She testified that during treatment, A. B. had told her about witnessing multiple incidents of domestic violence involving her mother and one of the children's putative fathers. A. B. told the counselor about being hit in the head with a mallet when the putative father threw it during an argument, and

---

[12] The mother raises no contention of error as to this counselor's expert testimony.

said she was afraid for herself and her sisters. A. B. also told the counselor she had been threatened with being hit with a belt with spikes on it. She had been diagnosed with symptoms of post-traumatic stress disorder, and needed ongoing therapy. The counselor testified that A. B. was bonded to Davis and that her placement in his home was appropriate.

The children's guardian ad litem testified that she had visited the girls' placement with Davis, that they were doing well and showing improvements in their physical and emotional well-being. She testified that the girls wished to remain in their current placement, and that it was in their best interests to do so.

The juvenile court, consistent with and relying upon these facts, found that A. B. and M. C. would be harmed if they were returned to the mother's neglectful treatment and if they remained, without any permanency, in foster care. In light of this extensive evidence and testimony, there was clear and convincing evidence sufficient to support the juvenile court's determination pursuant to OCGA § 15-11-310 (a) (5). See *In the Interest of L. P.*, 339 Ga. App. 651, 656-657 (2) (794 SE2d 252) (2016) (finding clear and convincing evidence showed harm if children were returned to parents because of parents' substance abuse and inability to provide stability, and

finding harm if children remained indefinitely in status quo without permanence, where foster parents wished to adopt them).

OCGA § 15-11-310 (b) provides that, "[i]f any of the statutory grounds for termination has been met, the court shall then consider whether termination is in a child's best interests after considering [certain delineated] factors . . .." "On appeal, [the mother] does not challenge the substance of the court's finding that the termination of [her] parental rights was in [M. C. and A. B.'s] best interests, and thus, [s]he has abandoned any such argument on appeal." (Emphasis omitted.) *In the Interest of C. S.*, 354 Ga. App. 133, 140 (1) (840 SE2d 475) (2020).

2. The mother argues that there was insufficient evidence of current dependency because Davis is meeting A. B. and M. C.'s needs.[13] See OCGA § 15-11-310 (a) (5). We do not agree.

While the mother does cite some general legal authority, she cites nothing on point to her specific contention and makes only conclusory statements unsupported by a single record citation. This is not the type of meaningful argument contemplated by our rules. Court of Appeals Rule 25 (c) (2) ("Any enumeration of error that is not

---

[13] The mother does not mention K. B. in this enumeration.

supported in the brief by citation of authority or argument may be deemed abandoned.").

To the extent that this enumeration has not been abandoned, we find that it lacks merit because our law provides that "[t]he test in determining termination of parental rights . . . *is whether the mother, ultimately standing alone*, is capable of mastering and utilizing the necessary skills to meet her parenting obligations." (Citation and punctuation omitted; emphasis in original.) *In the Interest of A. R.*, 302 Ga. App. 702, 710 (1) (c) (691 SE2d 402) (2010). The mother's contention that *someone other than herself* is caring for her children does not satisfy the requirement that she meets the test of being able to meet *her own* parenting obligations "standing alone." Id.

3. Citing OCGA §§ 15-11-202[14] and 15-11-233 (b) (3), the mother argues that the trial court erred in terminating her parental rights despite DFACS's failure to

---

[14] OCGA § 15-11-202 provides, inter alia, that DFCS shall make reasonable efforts to preserve or reunify families: "(1) *Prior to* the placement of an alleged dependent child in DFCS custody to prevent the need for removing him or her from his or her home; or (2) To *eliminate the need for removal* and make it possible for a child alleged to be or adjudicated *as a dependent child to return safely* to his or her home at the earliest possible time." (Emphasis supplied.) OCGA § 15-11-202 (a).

16

make "reasonable efforts" to reunite the family by providing her with transportation services for visitation.[15] We disagree.

It is clear from the Juvenile Code "that OCGA § 15-11-202 pertains to dependency proceedings, not termination proceedings. Termination proceedings are a separate matter and are governed by Article 4 of the Juvenile Code. See OCGA § 15-11-260 et seq." *In the Interest of E. M.*, 347 Ga. App. 351, 359 (3) (a) (819 SE2d 505) (2018). OCGA § 15-11-233,[16] which is within the dependency section of the Juvenile Code, does not contain a "reasonable efforts" provision. As noted above, the mother never appealed the dependency findings.

OCGA § 15-11-310 (5), however, contains a "reasonable efforts" requirement pertaining to termination proceedings, providing, in pertinent part, that the juvenile

---

[15] Although the mother alleges other deficiencies in DFACS's reunification efforts, she fails to support those contentions with argument or with citation to the record or authority. These contentions have been abandoned. See Court of Appeals Rule 25 (c) (2).

[16] OCGA § 15-11-233 (b) (3) provides that "[t]ermination of parental rights may not be in the best interests of a child adjudicated as a dependent child when: . . . DFCS has not provided to the family of such child services deemed necessary for his or her safe return to his or her home, consistent with the specific time frames for the accomplishment of the case plan goals."

17

court determine whether "reasonable efforts to remedy the circumstances have been unsuccessful or were not required[.]"

Here, the mother's case manager testified that she referred the mother to a service that provided psychological, parental fitness, and substance abuse assessments, and that no transportation was required as this service offered home visits. She additionally testified that she referred the mother for drug screens, and the mother never told her that she needed transportation assistance in that regard. The case manager did testify that, although DFACS would occasionally provide transportation to visitations, on two occasions, the mother requested transportation services the same day as her scheduled visitation with the children, but that, because of the short timeline, DFACS was unable to provide transportation.

The juvenile court's order found that at times the mother had access to transportation to assist with reunification and at times she did not, but also found that the mother was "resistant to family preservation services" and "did not utilize referrals for services to reunify with the children," although DFACS continued to provide them. On this basis, it found that DFACS's efforts to promote permanency, avoid foster care, preserve and reunify the family were reasonable. Given that on appeal from a termination order, it is the role of the juvenile court, rather than this

18

Court, to weigh the evidence and resolve issues of credibility or conflicting evidence, see *In the Interest of L. B.*, 356 Ga. App. 488, 491 (2) (847 SE2d 861) (2020), we find no error.

4. The mother additionally contends in various enumerations that the termination of her parental rights violated her constitutional rights and that the juvenile court erred in allowing protected patient-therapist testimony that "violat[ed] the equal protection clause of the United States Constitution." However, she failed to show that she raised any constitutional arguments below or obtained a ruling from the juvenile court on any constitutional claims.

"A constitutional issue cannot be considered when asserted for the first time on appeal but must be clearly raised in the trial court and distinctly ruled upon there. . . . Thus, as the arguments were neither raised nor ruled upon below, we do not undertake such exercise on appeal." (Citation and punctuation omitted.) *Cockerham v. Cockerham*, 359 Ga. App. 891, 901 (6) (860 SE2d 163) (2021).

In sum, for the reasons outlined above, the juvenile court's order is affirmed as to M. C. and A. B., and vacated and remanded with direction as to K. B.

*Judgment affirmed in part and vacated and remanded in part. Miller, P. J., and Pipkin, J., concur.*